Civil Cases Nos. 7971 and 7972, RIVERA v. SANTIAGO. Majority opinion reported on p. 361.

MR. JUSTICE WOLF dissenting.

When in 1904 the Legislature of Puerto Rico put in force the Code of Civil Procedure there was some doubt if by doing so the Spanish Unlawful Detainer Act had not been abolished along with other procedural matters formerly in existence. Therefore, on March 5, 1905, the Legislature passed the Unlawful Detainer Act which, with some minor exceptions, was a repetition of the old unlawful detainer law, the heritage of this Island from Spain. I do not know and shall not attempt to trace the origin of the doctrine that when a conflict of titles arose the Unlawful Detainer Act was not applicable. The certainty is that the Supreme Court of Spain held that when there was such a conflict, recourse must be had to an ordinary suit.

Reading the Unlawful Detainer Act there is not a single word in its contents to say under what circumstances recourse must be had to an ordinary suit. There was no limitation in the Unlawful Detainer Act. Any form or principles previously existing would disappear by reason of the definite rights awarded in Spain, and subsequently in Puerto Rico, to the parties in an unlawful detainer suit. It looks as if the Supreme Court of Spain was carrying forward some practice that had previously prevailed.

There is some analogy between the Unlawful Detainer Act and the Homestead Law in this wise: that when the latter was passed it abrogated or repealed any principles of the Civil Code or the Mortgage Law that were inconsistent with the said Homestead Law, and we have so interpreted the Act. Therefore, I insist that the terms of the Unlawful Detainer Act should be always followed and that no man should be sent out of court when his case can be settled within the terms of the Unlawful Detainer Act itself. There is nothing in the Unlawful Detainer Act which to my mind even mildly suggests that when the owner of a piece of property desires to recover possession of it that he has to have recourse to an ordinary suit whenever and however anybody who has built on the land with the permission of the owner refuses to surrender possession, let us say of the soil on which a house is built.

Section 18 of the Unlawful Detainer Act reads as follows:

"The fact that the settler or tenant makes claim for work performed, plants, or any other thing which can not be removed from the property, shall not be an obstacle to his ejectment. In such case the marshal shall proceed to make the ejectment without delay, and after it has been effected, he shall, at the request of the interested party, proceed to make a valuation of the property at the cost of the claimant, after the appointment of an expert to be designated by the interested parties, by mutual consent; and in case of a disagreement, three experts shall be appointed, one by each of the parties and the third by the marshal. After the valuation has been made and the result thereof has been received by the marshal in waiting signed by

the experts, the interested and said official, it shall be returned to the court with the order of execution; the right being reserved to the defendant to bring an action before the proper court to recover the amount assessed, to which he thinks himself entitled."

Under this section, as I read it, when an owner is proceeding against a person who has a house built on the owner's land, the latter does not first have to settle with the owner of the house for the materials and cost of the construction of a house before he has a right to begin an unlawful detainer proceeding. On the contrary, as was understood by the Bar of Puerto Rico and as I recall it made the object of several of our decisions, it is within the unlawful detainer proceeding that the question of the value of these materials may be decided either directly by the marshal with the consent of the parties or by calling in experts. This can be directly done under the auspices of the court in any unlawful detainer proceeding.

The modern principle is to avoid a multiplicity of suits and if a definite act for the ejectment of a person permits everything to be done under a specific act, there is no necessity of another kind of suit.

In the case before us the tenant or his attorney recognized this possibility, but attempted to set up prescription of the soil. This he had no right to do. Prescription did not lie under the circumstances of the case. If a man makes a lease and his lease expires, his possession always has been civilly that of the owner and when his lease expires he can not claim any rights not involved in the contract of lease. It is the tenant then who would set up any adverse claim against his lessor and then show some right thereto.

The "arrimado" or "agregado" who with the consent of the owner puts up a house does not thereby acquire any rights to the soil, much less, if anything, than a man to whom the land is directly leased. Supposing, without deciding, that when the owner of the land permits a person to become an "arrimado" or "agregado", he does so in return for services

rendered by the "arrimado" or "agregado", nevertheless, this relation can not be supposed to be higher than the lessee, usufructuary, or other person to whom Manresa refers. Why should a person who has no specific contract and shows none be preferred over people who have?

However, in the case at bar I find nothing to show that the "arrimado" through his attorney claimed that he had anything like a contract.

I find nothing in the citation from Sánchez Román which militates against the principles I am attempting to set forth. It is a mere confirmation of the fact that a person who builds on land belonging to another has certain rights when he is about to be ousted from the soil. These rights may be determined in the unlawful detainer suit.

The Civil Code provides in Section 373:

"Acts merely tolerated and those clandestinely executed, without the knowledge of the possessor of a thing, or with violence, do not affect possession."

The cases of the Plazuela Sugar Co. and others show how certain supposed high rights can not violate this principle. In other words, that a corporation that puts a railroad over another man's land, and the owner does not object, acquires no rights and the rails may be removed practically under the principle of said section.

I am not stressing the point too much because I think the case can be solved by direct principles of the Civil Code. However, if an attempt is made to assert that the owner of a piece of land is bound to give a *quid pro quo* to anybody who settles on his land in the manner that an "agregado" or "arrimado" does, and a supposed principle of law should be cited, then let us suppose a different case. Let us suppose that an "arrimado" or "agregado" does what was frequently done in the past and what is still being done, that he puts up a small house or a "tormentera" which has almost a negligible value, say $10. Under the suggestion, then, before the

owner of the piece of property could effect his ejectment, he must bring an ordinary suit against him.

The opinion seems to make it a condition precedent that the owner of a piece of land on which an "arrimado" or "agregado" has built a house, that the owner should have arrived at a settlement of the amount the latter is to pay the said "arrimado". It is obvious that there can be no agreement of the kind supposed unless the minds of both parties meet. In other words, if the "arrimado" demands three or four times as much for his property as it is worth, there probably will be no agreement. It is idle to say that in such a case, of course, the unlawful detainer proceeding should go on, because then the result would be that a person perfectly entitled to an unlawful detainer suit would, because of the refractory action of the "arrimado", have to include as an averment of his unlawful detainer complaint the fact that he could come to no agreement with the tenant. This is introducing something into the Unlawful Detainer Law that I do not find therein.

The sentences should have been reversed.